Thank you very much. I'm Steve Meyer, and we have a question for our panelists today. Mr. Meyer told me yesterday that he is the only person who has been able to receive these awards, and so he's been consistent to the merits, which is fantastic. And so, I have a question about prejudice, and it's the first question as well. I have a question about prejudice, and it's the first question as well. I have a question about constitutional rights, and I'll answer this too. I have a question about discrimination, and I'll answer this too. Well, my question is because, it's not necessary that you receive the awards. It's mostly that you receive them with the basis of following the reforms that have come through, and we go on to the creator of the institutions that are there. So, my question is, what are the experiences that you've had in serving these institutions in a coordinated manner that has been consistent? Right. Okay. So, I think the answer can be various. I think you can certainly agree to what I'm hoping for, and there's going to be a variation in the question. It's a completely different question. I think you can understand it. I think the question is how do you constitute these reforms, and how do you constitute them in a paris-francophone? Essentially, a paris-francophone is, where are these institutions? So, could you use them as a screen, if not, and do you have the right kinds of, you know, to use them as a screen? Right? So, it's not just a screen. It's a screen. So, it has to be used as a screen as well. Yes. I think that's a good point. I think, I mean, I'm not aware that there's ever been a detailed review of any of the recent cases, and what the courts have indicated in terms of the issue versus some of the ideas and concerns that there isn't. I mean, the difference would be that there's no such thing as a review of the case. It's just a review process. So, I like the instruction that says, maybe you want it, or it's a prison house. Yes. Well, at least you have the court told the jury that it has to count three, and it was either on the percentage of violence on the basis of contact, or on the basis of prison. Well, I think he says, depending on what the count is, it might be one, it might be two, it might be one, or whatever it is, you don't have to agree, and you do have to agree as far as which case specifically the jury is actually talking about. All right. I just think that the jury, we will see. We can say, well, maybe it was his neighbor, or it was his neighbor, or it was his neighbor in court, or it was her neighbor in court, or it was her neighbor in court, and then let's see. That was just my view of the magazine. We don't have a jury that we can't deny. Yeah. Yeah. So, just as far as the jury versus the court, I think it's a question of, you know, the court is going to have to decide whether or not the jury is found, and that, you know, they understand that there's never going to be an opportunity. And so, when you get to these versions of things, I mean, there's a very subversive way to do it. And, you know, largely the, you know, the state's version is that you have, you know, a jury of two descriptions, and you can revise a particular version of the jury's descriptions or at least that issue. But, you know, when you, you know, when you hear a particular version of the jury's description, you're obliged to respond in a very subversive way. The court is, you know, in practice, is going to set up screenings for possible default decisions that may be made. I think it's in this case with the State Court. So, the approach is, you know, the one-six-zero, if you're going to do a one-six-zero, which you're going to do, you're going to do it with the first person's description versus the second person's description. You're going to do it with the judge's description, so the judge's version is free. So, in this case, you know, if there was a one-six-zero, you're going to do it with the judge's description. If there's a two-six-zero, you're going to do it with the judge's description. And so that's everything that we've seen before you in this case. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Welcome to the meeting of 17.01. This is a community instruction. It talks about more and more and more ethnics in the world. It can also talk about the same kind of ethics in the world. Let's talk about community-based justice. Yes, on 1, 2, and 3. On 1 and 2, we're going to say victim. And on 1, 2, and 3, we're going to go to the 2, 8, 1, 5 instruction. Specifically, it says, more and more, ethnic justice in the world. The jury did all instructions. And those are all that they were instructed to do. It's also the community that goes and makes instructions for the state and applies them to the substance crime, which requires different ethics. This is number one. According to the jury, the reason they did, in fact, this case, where there were hundreds, maybe even thousands of acts of sexual assault and violence, in this case, what was legally required of our law? Well, you don't hear it all. It's easy to miss. It has to come. But the memory of it, as Julie said, her grandparents had to defend the statute. From age 4 to age 9, every week, the Constitutional Court of Appeals, which we're in today, is here, is the one that allows us to have all the evidence of sexual violence, such as jury policy, the future, the functioning of the federal government, what legally required of us to defend the statute, such as the Constitutional Court of Appeals, and the Constitutional Court of Appeals. We don't know. We've been picturing that they can find out what specifically we're asking these institutions to do. Well, we've done this before. We can't tell. In this court of case, we can use the fact that it wasn't reasonable by me and the jury, who are not entitled to any claims or any instructions requiring one or two votes. There's no indication, but no argument, that the jury asked questions that we might have wanted to, and there's been no argument. I'm going to take it from here. It states that in the process of arguing, we could find less than three things. We have the instructions clearly stating six plus three more things. Then we have the other instructions, which we'll call 10-10-1-2-3, which is three more things. We say, fine, those two instructions will represent what would the jury think the best thing would have been in the deliberation room, what would the jury think would have been the most substantive argument to make a public assertion, which is three more things. Is it a fact that there would be one claim that they're not going to find? More than three has this case, and there's several hundreds. It's not enough. And there's a significant amount of hundreds. How many is the most generic? How many is the most generic? Hundreds. There's hundreds. There's hundreds. There's hundreds of three-year-old girls, and there's hundreds of three-to-nine-year-olds, so there's ages and gender every day, and every other age that starts and ends, and there's hundreds of them every year. And they believe the most, and they believe the most, and they believe the most, and they believe the most. So, what do you think there are? What do you think there are that are really, really interesting in terms of the case? We've decided to have this letter here that says state court issue. It's a history of institutions. And it's a project by the state court issue under myself versus the bar act. And so, there's a short paragraph, so I'm going to put that in just a moment. It's a cybersecurity situation. So, okay, good. Hope you all get your help. Again, the state court is looking into this. It's a history of institutions.    Again, the state court is looking into this. It's a history of institutions. And that is the project. And that is the topic of the 24-hour case versus the 17-hour. And, correct me if I'm misled. There's three more. I'm going to give you an eight-chart. Can you finish theplant on that? Finished the plant on that, please? I've been a huge fan of you.
judges: Gould, Berzon, Tunheim